**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melissa Woolsey-Ragno, | No. CV-19-03681-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Melissa Woolsey-Ragno's Application for Disability Insurance Benefits by the Social Security Administration (SSA) under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 13, Pl. Br.), Defendant SSA Commissioner's Response Brief (Doc. 14, Def. Br.), and Plaintiff's Reply (Doc. 16, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 13, R.) and now affirms the Administrative Law Judge's (ALJ) decision (R. at 11–30) as upheld by the Appeals Council (R. at 2–7).

**I.     BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on July 27, 2015 for a period of disability beginning on August 1, 2013. (R. at 14.) Her claim was denied initially on November 3, 2015, and upon reconsideration on March 14, 2016. (R. at 14.) On January 4, 2018, Plaintiff appeared before the ALJ for a hearing regarding her claim.

(R. at 14.) On May 23, 2018, the ALJ denied Plaintiff's claim, and on March 28, 2019, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision. (R. at 2, 26.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: irritable bowel syndrome/colitis, asthma with tobacco dependence, degenerative joint disease, carpal tunnel syndrome, migraine headaches, major depressive disorder, post-traumatic stress disorder, generalized anxiety disorder, and obsessive compulsive disorder. (R. at 16.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 16.) The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 18.) The ALJ found that Plaintiff can perform light work "except she could occasionally and frequently lift and carry 10 pounds, sit for six hours in an eight-hour workday and stand/walk for six hours in an eight-hour workday. She can frequently climb ramps and stairs, balance, stoop, kneel, and crouch. She can occasionally climb ladders; never climb ropes and scaffolds; never crawl; frequently bilaterally handle, finger, feel, and overhead reach. She must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, and gases in addition to hazards, including moving machinery and unprotected heights. She is further limited to occasional interaction with the public and co-workers, with no crowd contact." (R. at 19.) The ALJ found that Plaintiff cannot perform her past relevant work but that there are jobs that exist in significant numbers that she can perform. (R. at 24–25.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,

517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity (RFC) and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises five arguments for the Court's consideration. (Pl. Br. at 4–5.) First,

Plaintiff challenges the ALJ's evaluation of medical opinions from her treating physician, her examining physician, and her physical therapist. (Pl. Br. at 4–5.) Next, Plaintiff challenges the ALJ's consideration of Plaintiff's symptom testimony. (Pl. Br. at 4–5.) Finally, Plaintiff argues that the ALJ improperly concluded Plaintiff can work as an office helper or housekeeper because those positions require greater exertional demands than the ALJ found Plaintiff can perform. (Pl. Br. at 24.) However, the Court disagrees with each of Plaintiff's arguments.

      **A.    The ALJ did not err in rejecting the medical opinions of Plaintiff's treating physician, her examining physician, or her physical therapist.**

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If a treating physician's opinion is not given controlling weight, then the ALJ must consider the relevant factors listed in 20 C.F.R. § 404.1527(d)(2)–(6) and determine the appropriate weight to give the opinion. *Orn*, 495 F.3d at 632. If a treating physician's opinion is contradicted by another doctor's opinion, the ALJ cannot reject the treating physician's opinion unless he provides specific and legitimate reasons that are based on substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)

Similarly, "[t]he opinion of an examining physician is . . . [generally] entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830. "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31.

Treating physical therapists are considered "other sources" and are generally not afforded the same weight as treating physicians under the regulations. *See Ghanim v.*

*Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). To reject a treating physical therapist's opinion the ALJ must provide germane reasons that are substantiated by the record. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

> **1. The ALJ correctly rejected the opinion of Plaintiff's treating physician because the opinion was inconsistent with the medical evidence.**

Dr. Tiffany Nunnelly treated Plaintiff for several years and submitted a medical source statement regarding Plaintiff's mental limitations. (R. 340–42.) Dr. Nunnelly diagnosed Plaintiff with major recurrent depression, asthma, and hypertension. (R. at 340.) She noted marked limitations in Plaintiff's ability to perform activities of daily living, to maintain social functioning, and to maintain concentration, persistence, or pace. (R. at 341.) She also opined that Plaintiff's symptoms would limit her functional abilities and "will interfere with the patient's ability to retain employment." (R. at 340.)

The ALJ gave the opinion little weight for three reasons. First, the ALJ gave the opinion little weight because Dr. Nunnelly is a general practitioner rather than a specialist in mental health treatment. (R. at 22.) Second, the ALJ gave the opinion little weight because it was inconsistent with Plaintiff's lack of treatment from a mental health specialist. (R. at 22.) Finally, the ALJ found that the opinion is inconsistent with the medical records, which revealed severe impairments but only mild limitations. (R. at 22.)

The ALJ erred by rejecting Dr. Nunnelly's opinion because she is not a specialist, and because Plaintiff did not receive mental health treatment from a specialist. Nevertheless, that error was harmless because it was inconsequential to the ALJ's evaluation of Dr. Nunnelly's opinion since the ALJ also gave a valid reason for rejecting the opinion. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008).

Dr. Nunnelly's opinion is inconsistent with the medical evidence, and consequently, the ALJ did not err in rejecting her opinion for that reason. Though the medical records undeniably demonstrate the existence of Plaintiff's severe mental impairments, the record

does not demonstrate limitations of the magnitude found by Dr. Nunnelly. Instead, the medical records largely reveal mild symptoms and limitations that are inconsistent with the severe limitations opined to by Dr. Nunnelly. For example, at a November 10, 2015 appointment, Dr. Nunnelly noted that Plaintiff was oriented to time and place and had a normal mood and affect. (R. at 364.) On May 23, 2016, Plaintiff presented with anxiety and depression, but she was also "able to maintain relationships," and her impairments did "not interfere with activities of daily living." (R. at 437.) Plaintiff also reported that her depression and anxiety improved with medication. (R. at 530.) Ultimately, the medical records supporting Dr. Nunnelly's opinion are sparse. Because the ALJ rejected Dr. Nunnelly's opinion for a specific and legitimate reason that was supported by substantial evidence he did not err. *Orn*, 495 F.3d at 633.

### 2. The ALJ correctly evaluated the examining physician's opinion.

Dr. Kenneth Littlefield twice evaluated Plaintiff's psychological symptoms and limitations. (R. at 353–60, 371–76.) He diagnosed Plaintiff with major depressive disorder, post-traumatic stress disorder, generalized anxiety disorder, and obsessive compulsive disorder. (R. at 356.) He also opined that Plaintiff has chronic symptoms that are likely to continue without intervention and treatment. (R. at 375.) Nevertheless, Dr. Littlefield only found that Plaintiff had functional limitations in the area of social interaction. (R. at 376.) In the area of social interaction he noted that it is likely Plaintiff would be "polite, cooperative, and pleasant to work with despite her dysphoria" in a work setting. (R. at 376.) The ALJ gave only partial weight to Dr. Littlefield's prognosis that Plaintiff's symptoms would likely continue without treatment because he concluded that the prognosis was speculative. (R. at 21.)

Plaintiff argues that the ALJ errantly rejected Dr. Littlefield's opinion and incorrectly found lesser limitations than Dr. Littlefield opined to. (Pl. Br. at 13.) The Court disagrees. Regardless of whether the ALJ errantly rejected Dr. Littlefield's prognosis, it is clear that the ALJ appropriately considered Dr. Littlefield's opinion and accounted for it

in Plaintiff's RFC.[1] Dr. Littlefield only opined to actual limitations in the area of social interaction. (R. at 358, 376.) And even in that area he opined to only mild limitations. (R. at 376.) The ALJ accounted for this limitation in Plaintiff's RFC, which limits Plaintiff to "occasional interaction with the public and co-workers, with no crowd contact." (R. at 19.) Furthermore, an ALJ need not adopt wholesale any physician's opinion regarding a claimant's limitations. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Accordingly, the ALJ did not err by rejecting Dr. Littlefield's prognosis or by refusing to adopt greater limitations than those included in Plaintiff's RFC.

### 3. The ALJ correctly rejected the treating physical therapist's opinion because it was contradicted by the medical evidence.

David Alexander Matuszeski, PT, treated Plaintiff 41 times for a right ankle fracture. (Pl. Br. at 14.) He opined that Plaintiff was limited to sedentary work and had various exertional limitations because of her impairments. (R. at 380–82.) The ALJ gave his opinion little weight because it is inconsistent with the diagnostic imaging, which show that Plaintiff's fracture has largely healed, and because it was inconsistent with progress notes that reflect improvement in Plaintiff's symptoms. (R. at 23.)

The ALJ gave a sufficient reason for rejecting Matuszeski's opinion and that reason is supported by substantial evidence. *See Molina*, 674 F.3d at 1111. As the ALJ noted, a CT scan showed that by November 2016 Plaintiff's fracture had largely healed. (R. at 521.) Similarly, Plaintiff stated on March 1, 2017 that an injection "helped tremendously" and that she "is no longer having pain." (R. at 403.) Other records also demonstrate that though she has some limitations, her ankle was healing. (R. at 407, 409, 444.) Therefore, substantial evidence supports the ALJ's rejection of Matuszeski's opinion and the ALJ did not err.

//

//

---

[1] If the ALJ errantly rejected Dr. Littlefield's prognosis, such an error would be harmless because he correctly incorporated Dr. Littlefield's opinion into Plaintiff's RFC.

- 7 -

**B. The ALJ correctly rejected Plaintiff's symptom testimony because her daily activities are inconsistent with her alleged limitations and the medical evidence undermines her allegations.**

The ALJ rejected Plaintiff's allegations of disabling symptoms for three reasons. First, the ALJ found that "the medical evidence of record does not entirely support the claimant's allegations regarding the extent of her mental and physical impairments." (R. at 23.) Second, the ALJ found that Plaintiff's daily activities are not as limited as expected given Plaintiff's allegations of disabling symptoms. (R. at 23.) Finally, the ALJ found that Plaintiff's allegations were undermined by her lack of discomfort and ability to concentrate and communicate at the hearing. (R. at 24.)

An ALJ performs a two–step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's symptom testimony and those reasons are supported by substantial evidence.[2] Specifically,

---

[2] The ALJ erred by rejecting Plaintiff's testimony because of her demeanor at the hearing. Plaintiff's comfort and ability to answer questions at the hearing is not substantial evidence that her allegations of disabling symptoms are overstated. Nevertheless, this error

the ALJ cited Plaintiff's daily activities as being inconsistent with her alleged limitations. (R. at 23.) Plaintiff uses mobile devices for several activities, she consistently travels between Phoenix and Tucson, uses Uber and public transportation, and regularly attends events with her significant other. (R. at 23.) Although Plaintiff is correct that a claimant need not be complete incapacitated in order to be disabled, these activities still undermine Plaintiff's allegations of disability because her activities show she was not as limited as she alleged. (Pl. Br. at 22.) Thus the ALJ did not err by relying on Plaintiff's daily activities to reject her testimony.

Similarly, as discussed above, the medical evidence undermines Plaintiff's allegations because the medical evidence substantiates only minor limitations. And although an ALJ cannot reject symptom testimony solely because it is inconsistent with the medical evidence, such an inconsistency is a permissible consideration. *Burch*, 400 F.3d at 680. Consequently, the ALJ did not err in rejecting Plaintiff's symptom testimony.

**C. Substantial evidence supports the ALJ's conclusion that Plaintiff can perform light work despite her limitation to lifting or carrying up to ten pounds.**

The ALJ found that Plaintiff can perform light work, but is limited to occasionally and frequently lifting or carrying ten pounds. (R. at 19.) However, light work requires lifting no more than 20 pounds. 20 C.F.R. § 404.1567(b). Still, the ALJ concluded that Plaintiff can perform light unskilled work as an office helper or housekeeper based on the vocational expert's testimony. (R. at 25.) Plaintiff claims this was error because light work entails greater exertional requirements than the ALJ found Plaintiff is capable of. (Pl. Br. at 24.)

Though Defendant apparently concedes that the ALJ's and vocational expert's finding that Plaintiff can work as a housekeeper was error, the Court concludes that the their conclusion that Plaintiff can work as an office helper was not error. (Def. Br. at 15.) The ALJ's conclusion was not error because an ALJ need only resolve a conflict between

was harmless because the ALJ provided other sufficient reasons for rejecting Plaintiff's testimony. *Stout*, 454 F.3d at 1055.

a vocational expert's testimony that a claimant can perform a job and the listed requirements for that job when the conflict is apparent or obvious. *See Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016).

Here, there was no apparent or obvious conflict. The Dictionary of Occupational Titles description of the occupation of office helper does not list lifting or carrying 20 pounds as an "essential, integral or expected" component of that position. DOT 239.567-010 OFFICE HELPER, available at 1991 WL 672232. *See Gutierrez*, 844 F.3d at 808. Furthermore, the vocational expert testified that the claimant could perform some light work even if she could never lift 20 pounds. (R. at 93.) Finally, the vocational expert also testified that Plaintiff could perform the office helper position given her limitations, and that this testimony was consistent with the Dictionary of Occupational Titles. (R. at 92–93.) Therefore, the Court concludes that substantial evidence supports the ALJ's conclusion that there is work in significant numbers in the national economy that Plaintiff can perform, and thus, she is not disabled.

**IT IS THEREFORE ORDERED** affirming the May 18, 2018 decision of the ALJ, as upheld by the Appeals Council on March 28, 2019.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 14th day of April, 2020.

Honorable Diane J. Humetewa
United States District Judge